IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BRANDI F. VEGA**                                                      **PLAINTIFF**

**v.**                                **CIVIL ACTION NO. 1:18-cv-395-MTP**

**COMMISSIONER OF SOCIAL SECURITY**               **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Brandi F. Vega brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the Court finds that Plaintiff's Motion for Summary Judgment [14] should be granted in part and denied in part, the Commission's Motion to Affirm [16] should be granted in part and denied in part, and this action should be remanded for further consideration.

**PROCEDURAL HISTORY**

On December 21, 2015, Plaintiff applied for supplemental security income, alleging that she has been disabled since October 28, 2015, due to low back disc herniation, degenerative disc disease, spinal stenosis, sciatica, asthma, hiatal hernia, gurd, irritable bowel, intersticial cystsis, and bone spurs. (Administrative Record [10] at 62; 152-60). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing, and on January 31, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. ([10] at 17-24). Plaintiff then appealed the ALJ's decision to the Appeals Council. On October 19, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([10] at 5-7). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his January 31, 2018, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 21, 2015. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of lumbar and cervical spine status post multiple two surgeries, bilateral hip dysplasia status post-surgery, and obesity." At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([10] at 19-20). The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform sedentary work as defined in 20 CFR

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

416.967(a)[3] with the following additional limitations: never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance and stoop, but rarely crouch, kneel or crawl. ([10] at 20). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([10] at 23). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ found that Plaintiff was not disabled. ([10] at 23-24).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.967(a).

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises four grounds for relief: (1) the ALJ failed to properly analyze whether Plaintiff's impairments met a Listing; (2) the ALJ failed to provide adequate weight to the opinions of Plaintiff's treating physician; (3) the ALJ improperly concluded that Plaintiff could perform other jobs in the national economy; and (4) the ALJ was not properly appointed under the Constitution.

*Listing*

Plaintiff argues that remand is required because the ALJ should have considered Listing 1.04(A), Disorders of the Spine, but instead performed no listing analysis.  At step three of the sequential analysis, the ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [SSA] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 1525(a).  The criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An ALJ is required to discuss the evidence offered in support of a disability claim and to explain why a claimant is not disabled. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). At step there, an "ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review." *Savoie v. Colvin*, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015) (citing *Audler*, 501 F.3d at 448).

Here, the ALJ determined as follows:

> The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment.

[10] at 20.

The ALJ neither identify any particular listing he considered nor compared Plaintiff's symptoms with the criteria of any particular listing. The ALJ's summary conclusion is beyond meaningful judicial review. Defendant does not argue that the ALJ's analysis was sufficient. Instead, Defendant argues that even if the ALJ erred in his analysis at step three, this was a harmless error because Plaintiff has failed to show that she met the requirements of Listing 1.04(A).

An ALJ's error does not require remand unless the Plaintiff can show prejudice. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that procedural perfection in an ALJ's analysis is not required as long as the plaintiff's substantial rights are not affected).

To meet Listing 1.04(A), a claimant must show:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

>resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P. app. 1 § 1.04.

In January of 2016, Plaintiff underwent lumbar fusion surgery. [10] at 356. Then, in October of 2016, Plaintiff underwent right hip surgery. [10-2] at 147-48. Defendant points to a few instances when Plaintiff exhibited normal range of motion and had normal findings during motor and sensory exams. *See* [10-1] at 132-40, 447; [10-2] at 319, 722. Plaintiff, however, points to several instances when she exhibited limited range of motion ([10] at 335, 339; [10-1] at 128; [10-2] at 99, 498), decreased strength ([10] at 339; [10-2] at 176), and decreased sensation and reflexes ([10-1] at 132-33, 137; [10-2] at 44). Plaintiff also points to positive straight-leg raising tests. *See* [10] at 339; [10-2] at 682.

Plaintiff presented evidence that *could* satisfy the criteria of Listing 1.04(A). The ALJ should have compared Plaintiff's symptoms and the test results with the criteria for Listing 1.04A. *See Darby v. Commissioner*, 2015 WL 4605629, at *6-7 (W.D. La. July 30, 2015). Therefore, this matter will be remanded for an analysis of whether Plaintiff has an impairment or combination of impairments that meets or medically equals a listed impairment.

*Treating Physician*

Plaintiff also contends that the ALJ failed to give due consideration to the medical opinion of one of Plaintiff's treating physicians pursuant to SSR 96-2P (S.S.A.), 1996 WL 374188, 20 C.F.R. § 416.927, and the ruling in *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001). Specifically, Plaintiff argues that the ALJ erred by giving little weight to the opinion of Dr.

Patrick Wright without sufficiently articulating why his opinion was rejected. Additionally, Plaintiff avers that the ALJ's dismissal of Dr. Wright's opinion is contrary to the evidence of record.

In June of 2017, Dr. Wright completed a "Physical Residual Functional Capacity Questionnaire" concerning the degree of Plaintiff's impairments. ([10-1] at 43-46). According to Dr. Wright, Plaintiff suffered from right hip pain throughout the day, a limp, and fatigue brought on by her diagnosis of right hip dysplasia. Dr. Wright indicted that during a typical work day, Plaintiff was capable of lifting and carrying less than ten pounds rarely, standing and walking for less than two hours, and sitting for less than two hours. Dr. Wright indicated that Plaintiff's injury would cause her to experience pain and other symptoms on a frequent basis throughout the day that are significant enough to interfere with her attention and concentration to perform simple work tasks. Dr. Wright also indicted that Plaintiff could rarely twist, occasionally stoop or crouch, and never climb stairs or ladders. Finally, Dr. Wright indicated that Plaintiff would need to be absent from work more than four days per month due to her impairment and is incapable of performing even "low stress" jobs. When prompted to identify the clinical findings and objective signs of Plaintiff's impairments, Dr. Wright responded as follows: "limp, right hip pain at extremes of motion." ([10-1] at 43).

The ALJ considered Dr. Wright's opinion and ultimately afforded it "little weight". The ALJ explained:

> [Dr. Wright's] opinion receives little weight, however, since it is not supported by the evidence of record, discussed above. Further, this doctor notes that the claimant was recovering from surgery at that time, performed less than 12 months prior, and had a "good" prognosis. The undersigned notes that the claimant sat for over 30 minutes during the hearing without complaint. Finally, the claimant reported herself that she could concentrate for a "very long time," in contrast to this doctor's opinion.
> ([10] at 23) (citations omitted).

7

A treating physician's opinion on the nature and severity of a patient's impairments must be accorded controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The law, however, is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. *Id*. at 456. Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion. *Id*.

The regulations require the ALJ to perform a detailed analysis of a treating physician's views under the criteria set for in 20 C.F.R. §§ 404.1527(c), 416.927(c) in the absence of controverting medical evidence from other treating and/or examining physicians. *Id*. at 453. Pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c), the factors to be considered are the length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. If the ALJ concludes that the treating physician's records are "inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id*. at 453.

Plaintiff argues that the ALJ did not appropriately defer to the opinion of treating physician Dr. Wright; however, the record demonstrates that Dr. Wright's opinion fits within the

8

"good cause" exception because it is so brief and conclusory that it lacks persuasive weight and it is inconsistent with the record as a whole.

On April 1, 2016, approximately one year before Dr. Wright completed the questionnaire at issue, Dr. Terry C. Smith conducted a post-operation review of the Plaintiff.  In this report, Dr. Smith found that Plaintiff's musculoskeletal system was normal aside from her complaints about her lumbar pain, which she stated was improving.  He noted that "[Plaintiff] has had significant pain reduction".  ([10-1] at 62-63).  On October 10, 2016, Plaintiff's physical therapist indicated that her left and right lower extremities had "[a]dequate [range of motion] to perform [activities of daily life] and age-appropriate, functional activities."  Furthermore, she had functional mobility and required minimal assistance to stand or sit.  ([10-2] at 180).  Dr. Smith's opinion, along with the opinion of the Plaintiff's physical therapist, are at odds with the extreme exertional limitations indicated in the questionnaire.

Plaintiff argues that the ALJ "failed to provide specific reasons and evidence to support his rejection of Dr. Wright's opinion, and this Court should not now provide the reasons and evidence for him." ([18] at 3).  Despite this assertion, the ALJ did provide a specific reason as to why he rejected assigning more weight to Dr. Wright's opinion—that his opinion is inconsistent with the record as a whole.  ([10] at 22).  In addition, the ALJ cited the two controverting medical opinions discussed above, along with several more exhibits, as evidence that the record is not consistent with Plaintiff's claim of disability.  ([10] at 21-22).

Plaintiff has failed to demonstrate that the ALJ erred when he assigned little weight to the opinion of treating physician Dr. Wright.  It is not within the discretion of this Court to weigh the controverting medical evidence; that is the role of the ALJ.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  "[T]he ALJ is free to reject the opinion of any physician when the evidence

9

supports a contrary conclusion." *Id*. (citations and internal quotations omitted). The ALJ appropriately found that the evidence of record was contrary to the treating physician's opinion. Accordingly, the Court finds that the ALJ did not err when he assigned little weight to Dr. Wright's opinion.

*Jobs in the National Economy*

Plaintiff argues that remand, or an award of benefits, is required because she cannot perform the jobs named by the vocational expert ("VE") and accepted by the ALJ at step five. At step five, an ALJ considers whether there are a significant number of jobs in the national economy that the claimant can perform. Here, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The three representative jobs listed by the VE were surveillance system monitor, receptionist, and telephone solicitor. Surveillance system monitor is an unskilled job with a specific vocational preparation ("SVP") level of 2, but receptionist and telephone solicitor are semi-skilled jobs with SVP levels of 3. [10] at 24.

Social Security regulations treat a "skill" as a specific and articulable learned ability. 20 C.F.R. § 404.1565(a). "We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d). "RFC alone never establishes the capability for skilled or semiskilled work. Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10.

Plaintiff argues that the ALJ made no finding as to whether Plaintiff had transferrable skills, and thus, the records does not support a determination that she can perform semiskilled work. Indeed, the ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." [10] at 23.

Defendant agrees with the ALJ findings and argues that transferability of skills is irrelevant in this case. According to Defendant, transferability of skills is material only in relatively few instances when certain conditions are met.

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled. . . . When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

SSR 82-41.

Defendant notes that the ALJ consulted the Medical-Vocational Guidelines to determine that transferability is irrelevant. According to Defendant, the ALJ used the guidelines (or grid) as a framework, which show that transferability of skills is immaterial to this case. In reviewing 20 C.F.R. pt. 404, subpt. P, app. 2, the Court looked to the applicable Table I—*Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)*. Upon reviewing the grid, the Court went to Rule 201.28 which provides that a younger individual (age 18-44) who is a high school graduate with no transferable skills is not disabled. Defendant argues that this finding within the grid shows that transferability of skills is irrelevant. This finding within the grid, however, is

11

based on the availability of *unskilled* jobs for the claimant; it is not a finding that the claimant can perform any job regardless of skill level.

Plaintiff was a younger individual and a high school graduate, and had she been simply limited to sedentary work, the grid would have shown that she is not disabled.  The ALJ, however, found Plaintiff was not simply limited to sedentary work but had additional limitations, including: never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance and stoop, but rarely crouch, kneel or crawl. ([10] at 20).  Plaintiff's additional limitations may erode the availability of unskilled jobs, and additional analysis beyond the grid was necessary.  For this reason, the ALJ sought the assistance of a VE.  The ALJ made no determination as to whether Plaintiff had transferrable skills, and the VE did not identify any of Plaintiff's transferable skills.  Nevertheless, the VE did not confine his discussion to available unskilled jobs, but testified that Plaintiff could perform semiskilled jobs.[4]  The ALJ did not ask about the apparent conflict and failed to explain why Plaintiff could perform the demands of the listed semiskilled jobs.[5]

The Commissioner bears the burden of showing that there is substantial work in the national economy that Plaintiff can perform. *Audler*, 501 F.3d at 448.  The record, however, is

---

[4] The Court notes that if Defendant's argument were correct and the transferability of skills were irrelevant, it would not have been error for the ALJ to find that Plaintiff could perform skilled jobs.

[5] The VE listed one unskilled job (surveillance system monitor) and testified that there are more than 13,000 of these jobs in the national economy.  "[W]ork exists in the national economy when it exists in significant numbers in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566.  The record does not contain sufficient evidence demonstrating that there is a significant number of these jobs.  In reviewing whether the number of jobs available is significant, courts have considered a number of flexible factors, including the number of jobs available in the region in which the claimant lives, the distance the claimant is capable of traveling to engage in the assigned work, the isolated nature of the job, and the availability of such work. *See Mercer v. Halter*, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001).

silent as to why Plaintiff can perform the demands of the listed semiskilled jobs. *See Rivera v. Astrue*, 2010 WL 711717, at *5-6 (N.D. Tex. Mar. 2, 2010) (holding that reversal was required when the VE identified semiskilled work but the ALJ made no findings concerning transferability of skills); *S.W.O. v. Commissioner*, 2012 WL 967775, at *3-4 (W.D. La. Mar. 2, 2012); *Tanksley v. Colvin*, 2013 WL 5350912, *7-9 n. 12 (N.D. Tex. Sept. 24, 2013); *Jeansonne v. Astrue*, 2008 WL 2073996, at *11-12 (W.D. La. April 25, 2008). Without further development, it is not clear that the record provides a sufficient basis to support the Commissioner's determination that there are a significant number of jobs in the national economy that the claimant can perform. Thus, remand is appropriate.

### *Appointment of the ALJ*

Citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Plaintiff seeks a remand of her case for a new hearing on the grounds that the ALJ is an inferior officer under the Appointments Clause[6] and was not constitutionally appointed consistent with that provision. Defendant does not contest Plaintiff's assertion that the ALJ was not properly appointed, but argues that Plaintiff forfeited this issue by failing to exhaust the issue during the administrative proceedings.

The United States Court of Appeals for the Fifth Circuit has not decided this issue. On January 23, 2020, the Third Circuit confronted this issue and held that exhaustion is not required due to the characteristics of the SSA review process. *See Cirko v. Comm'r*, 948 F.3d 148 (3d Cir. 2020). Thereafter, however, the Tenth Circuit and Eighth Circuit held that claimants forfeit their Appointment Clause claims when they fail to exhaust the issue during the administrative proceedings. *See Carr .v Comm'r*, 961 F.3d 1267 (10th Cir. 2020); *Davis v. Saul*, 963 F.3d 790

---

[6] *See* U.S. Const. art. II, § 2, cl. 2.

(8th Cir. 2020).  The rulings in *Carr* and *Davis* are consistent with the rulings of the majority of district courts—including this Court[7]—that have considered this issue. *See Iris R. v. Saul*, 2020 WL 2475824, at *6 (N.D.N.Y. May 13, 2020) (compiling district court cases).  Having carefully considered these cases, along with the Fifth Circuit's holding in *D.R. Horton, Inc. v. NLRB*,[8] the Court finds that Plaintiff has forfeited this claim.

    IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion for Summary Judgment [14] is GRANTED in part and DENIED in part.

2. The Commissioner's Motion to Affirm [16] is GRANTED in part and DENIED in part.

3. This action is remanded to the Commissioner for further administrative proceedings consistent with this Order.

4. All other relief requested by Plaintiff is denied.

5. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

    SO ORDERED this the 6th day of August, 2020.

                                      s/Michael T. Parker
                                      UNITED STATES MAGISTRATE JUDGE

---

[7] *See*, *e.g.*, *Williams v. Berryhill*, 2018 WL 4677785, at *2 (S.D. Miss. Sept 28, 2018).

[8] 737 F.3d 344, 351 & n. 5 (5th Cir. 2013) ("challenges under the Appointments Clause are 'nonjurisdictional structural constitutional objections' that are within a court's discretion to consider").